UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DEANDREW WOODARD,

        Plaintiff,

v.

UNKNOWN BRAMAN et al.,

        Defendants.
_____/

Case No. 1:25-cv-138

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's official capacity claims, First Amendment retaliation claim against Defendant Braman, and Eighth Amendment claims. Plaintiff's First Amendment free exercise claim and First Amendment retaliation claim against Defendant Fountain remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Transportation Officer

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Unknown Braman and Lieutenant Unknown Fountain in their individual and official capacities. (Compl., ECF No. 1, PageID.2.)

Plaintiff is Muslim and observes his religion by wearing a kufi. (*Id.*, PageID.15.) On September 18, 2024, Plaintiff reported to the DRF control center for an off-site medical appointment. (*Id.*, PageID.8.) Plaintiff began walking to the area to be strip searched before leaving for the appointment when Defendant Braman told Plaintiff, "No do rags are allowed." (*Id.*) Plaintiff informed Defendant Braman that he was not wearing a do rag, but a kufi, a religious head cap worn by Muslim men. (*Id.*) Plaintiff told Defendant Braman that his kufi is "part of [his] identity" as a Muslim, but Defendant Braman refused to allow Plaintiff to wear it. (*Id.*, PageID.9.) Plaintiff walked to the control center window to ask Defendant Fountain for his MDOC identification card, which shows Plaintiff wearing his kufi, but Defendant Fountain told Plaintiff to take his kufi back to his unit. (*Id.*, PageID.10.) Plaintiff complied and returned to his housing unit with his kufi. (*Id.*, PageID.10–11.) On the way to his housing unit, Plaintiff stopped to speak with non-party Sergeant Bellinger regarding the dispute over Plaintiff's kufi. (*Id.*, PageID.10.) Sergeant Bellinger responded that he had no authority to overrule Defendant Lieutenant Fountain. (*Id.*) Plaintiff continued to his housing unit. (*Id.*)

When Plaintiff arrived back at the control center to leave for his medical appointment, Defendant Fountain told Plaintiff that the transportation left without Plaintiff. (*Id.*, PageID.11.) Plaintiff was unable to attend his off-site medical appointment. (*Id.*) When Plaintiff told Defendant Fountain that he was not arguing but attempting to resolve the issue involving his kufi before filing a grievance, Defendant Fountain told Plaintiff to leave the control center or be taken to segregation. (*Id.*, PageID.12.) Plaintiff complied and left the control center. (*Id.*)

Plaintiff claims that, by being denied his off-site medical appointment, Plaintiff's medical care was delayed. (*Id.*, PageID.13.) Plaintiff alleges that this "can cause unknown complications to the 'future' health of his plaintiff." (*Id.*, PageID.13.) He alleges that Defendants "knew or should have known" of this need for medical care. (*Id.*, PageID.13–14.) Plaintiff further attaches medical kites that would suggest that, because of the delay in medical care, Plaintiff experienced "blinding" pain behind his right eye. (ECF No. 1-4, PageID.41–46.)

Based on the facts alleged, Plaintiff brings First Amendment free exercise and retaliation claims. (ECF No. 1, PageID.15, 16.) Plaintiff also brings an Eighth Amendment claim for deliberate indifference to a serious medical need. (*Id.*, PageID.13.) Plaintiff seeks compensatory and punitive damages. (*Id.*, PageID.17–20.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

5

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities. A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).

Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under Section 1983 for

money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013). Therefore, Plaintiff fails to state a claim against Defendants in their official capacities upon which relief can be granted. The Court will dismiss Plaintiff's official capacity claims.

### B.     First Amendment Free Exercise Claim

Plaintiff asserts that Defendants Braman and Fountain violated Plaintiff's right to free exercise of his religion in refusing to allow Plaintiff to wear his kufi to his outside medical appointment.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.* While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendants' behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff has sufficiently alleged his sincerely held religious beliefs, and there is no doubt that wearing a head covering can constitute a religious practice. The next consideration is "whether

7

the challenged practice of the prison officials infringes on the religious belief . . . ." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise of religion unless it "place[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). "[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. Such a burden "must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult." *Id.*

Here, Plaintiff contends that wearing his kufi is a critical part of his religious exercise as it allows anyone to identify Plaintiff as a Muslim man. (ECF No. 1, PageID.9.) Taking Plaintiff's allegations as true as is required at this stage, Plaintiff's First Amendment free exercise claims may not be dismissed upon initial review.

### C.     First Amendment Retaliation Claim

Plaintiff alleges that Defendants violated Plaintiff's First Amendment rights through unlawful "retaliatory conduct." (ECF No. 1, PageID.16.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory

conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### a. Protected Conduct

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment.").

Here, Plaintiff alleges that he "was engaged in protected conduct when making a verbal complaint and highlighting MDOC policy and court of law case law . . ." regarding Plaintiff's religious practice of wearing a kufi. (ECF No. 1, PageID.16.) At this stage of the proceedings, Plaintiff has alleged sufficient facts to suggest that he engaged in protected conduct for purposes of his First Amendment claim.

### b. Adverse Action and Retaliatory Motive

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

Plaintiff alleges that Defendants engaged in adverse actions against Plaintiff "by giving an unreasonable order to remove [Plaintiff's] religious kufi and canceling offsite medical appointment despite being made aware of [MDOC policy and case law]." (ECF No. 1, PageID.16.) First, the order to remove Plaintiff's kufi could not be considered an adverse action motivated by retaliatory animus because it *preceded*, and in fact prompted, Plaintiff's protected conduct. Second, while canceling an outside medical appointment may be considered sufficiently adverse, the facts alleged in Plaintiff's complaint do not suggest that these Defendants "cancelled" Plaintiff's appointment, only that the transportation left without Plaintiff after Plaintiff delayed in returning his kufi to his unit. Construing Plaintiff's allegations indulgently, the Court concludes that leaving Plaintiff behind might rise to the level of adverse action.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state ... a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

With regard to Defendant Braman, Plaintiff alleges no facts that support an inference that leaving Plaintiff behind was a retaliatory act. With regard to Defendant Fountain, however, when Plaintiff inquired as to the reason he was left behind, Fountain suggested Plaintiff was left behind because Plaintiff "was arguing." (Compl., ECF No. 1, PageID.12.) The "arguing" appears to be Plaintiff's protected conduct. Therefore, the Court concludes that Plaintiff's retaliation claim against Defendant Fountain should go forward. But, with regard to Defendant Braman, Plaintiff has failed to state a claim upon which relief can be granted. Accordingly, Plaintiff's First Amendment retaliation against Defendant Braman will be dismissed.

### D. Eighth Amendment Medical Care Claim

Plaintiff alleges that Defendants violated his Eighth Amendment rights by interfering with Plaintiff's ability to attend his off-site medical appointment, thereby delaying his medical care. (ECF No. 1, PageID.13.) Plaintiff does not provide the Court with the details of his medical condition but attaches medical kites that would suggest that, because of the delay in medical care, Plaintiff experienced "blinding" pain behind his right eye. (ECF No. 1-4, PageID.41–46.)

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a medical professional's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

11

Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardeman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The Eighth Amendment's subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to

12

'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart*, 894 F.3d at 738 (quoting *Farmer*, 511 U.S. at 842).

Plaintiff does not allege facts that support an inference that he suffered a serious medical need on September 18, 2024. He frequently repeats the words "serious medical need;" but he never actually identifies that need in his complaint or the documents he has attached. With regard to the objective element, therefore, Plaintiff offers only legal conclusions—not facts—and the Court is not required to accept as true "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A plaintiff's allegations must include "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Here, Plaintiff's allegations "standing alone do not move the claim from possible and conceivable to plausible and cognizable." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1167 (6th Cir. 2022) (citing *Twombly*, 550 U.S. at 570).

Plaintiff attaches medical kites that he sent two weeks or more after the September 18 incident, wherein he complains of intense pain arising between his right eye and temple. (See ECF No. 1-4, PageID.41–46.) Presumably this pain arises from the condition that was reason for Plaintiff's offsite medical appointment. But Plaintiff does not make that allegation. Of greater significance, however, is the fact that the complaints post-date the incident by two weeks. The delay supports the inference that Plaintiff was not suffering that pain on September 18. Plaintiff alleges no other facts from which the Court (or Defendants) might infer Plaintiff's medical need or its seriousness as of September 18. Accordingly, the Court concludes that Plaintiff has failed to allege facts to establish the objective element.

Plaintiff's claim also fails with regard to the subjective element. Plaintiff alleges that Defendants "knew or should have known" of Plaintiff's serious medical need and the dangers in delaying care. (ECF No. 1, Page ID.13–14.) However, "knew or should have known" describes a

negligence standard, insufficient to create liability under Section 1983. *Farmer*, 511 U.S. at 835. Plaintiff fails to allege any facts that would plausibly suggest that Defendants Braman and Fountain knew the nature of Plaintiff's medical condition and that delaying Plaintiff's outside medical appointment posed a substantial risk of serious harm, let alone that they disregarded that risk when telling Plaintiff to return his kufi to his unit as mandated by the MDOC Transportation Manual. (*See* ECF No. 1-2, PageID.26.) Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claims premised upon the delay in Plaintiff's outside medical care.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the Prison Litigation Reform Act, the Court will dismiss, for failure to state a claim, Plaintiff's official capacity claims, his First Amendment retaliation claim against Defendant Braman, and Eighth Amendment claims under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment free exercise claim and his First Amendment retaliation claim against Defendant Fountain remain in the case.

An order consistent with this opinion will be entered.

Dated:   March 27, 2025                             /s / Sally J. Berens
                                                    SALLY J. BERENS
                                                    United States Magistrate Judge